UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **PATRICIA HARDIMON** *on behalf of herself and all other similarly-situated individuals*, | ) ) ) ) | CASE NO. 1:20-cv-246 JUDGE PAMELA A. BARKER |
| Plaintiff, | ) ) | MAGISTRATE GREENBERG |
| v. | ) ) | |
| **ERICO INTERNATIONAL CORPORATION,** | ) ) ) | |
| Defendant. | | |

### JOINT MOTION FOR APPROVAL OF SETTLEMENT

Pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), Plaintiff Patricia Hardimon and Defendant ERICO International Corp. respectfully and jointly move the Court to approve the proposed settlement memorialized in the Agreement of Settlement and Release ("Settlement Agreement") marked as Exhibit 1. The settlement resolves all claims of named Plaintiff Patricia Hardimon and all Opt-In Plaintiffs under the FLSA, the Ohio Minimum Fair Wage Standards Act, the Ohio Prompt Pay Act, and the common law.

The parties submit that the settlement is fair, reasonable, and adequate and qualifies for approval under the FLSA, 29 U.S.C. § 216(b). Agreement was finally reached after extensive exchange of informal discovery, settlement negotiations, and ultimately a 6.5-hour private mediation. The parties (through counsel) had a number of other pre-mediation discussions as to settlement that were very meaningful in narrowing the issues and enabled the mediation to be successful when it was formally convened. If approved by the Court, the settlement will provide settlement payments to the Plaintiff and Opt-Ins representing, by Plaintiff's counsel's analysis, at least 90% of their alleged unpaid wage and overtime compensation.

The following settlement documents are submitted for the Court's consideration and approval:

1

Exhibit 1:   Agreement of Settlement and Release

Exhibit 2:   Table of Individual Payments

Exhibit 3:   Proposed Final Order Approving Settlement

The sections below explain the litigation, the negotiations, the Settlement terms, the proposed payments and distributions, and the propriety of approval.

### I. THE ACTION

#### A. The Claims and Issues

On February 5, 2020, named Plaintiff Patricia Hardimon commenced this Action on behalf of herself and all similarly situated hourly production workers employed by Defendant between February 5, 2017 and the present. Plaintiff's Complaint alleged that Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, the Ohio Minimum Fair Wage Standards Act, and the Ohio Prompt Pay Act by refusing to pay the hourly production workers at its two production facilities in Solon, Ohio for the time they worked before and after their scheduled shifts. Defendant answered the Complaint and denied liability or wrongdoing of any kind.

#### B. Initial Exchange of Evidence and Analyses

Shortly after Defendant answered Plaintiff's Complaint, the parties began a process of informal exchange of evidence that continued throughout the litigation. As early as June 2020, Defendant began producing wage records for Plaintiff and the other Opt-Ins who had joined the case at that time.

#### C. Conditional Certification and Notice

On June 29, 2020, the Parties jointly filed with the Court a proposed stipulation for conditional certification of the Action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) and issuance of notice to potential opt-ins informing them of their right to join the Action by submitting consent forms. The stipulation was approved by the Court the same day. Notice was issued to all current and former non-exempt production employees who worked at Defendant's two manufacturing facilities in Solon,

Ohio at any time since February 5, 2017, and seventy-five Opt-Ins joined the Action alongside Plaintiff by submitting consent forms filed with the Court.

### D. Discovery and Sample Group

On December 8, 2020, Defendant produced the complete payroll data for Plaintiff and the Opt-Ins. Counsel worked together and agreed upon a sample Opt-In set of Plaintiffs for whom complete timekeeping data would be exchanged. On March 4, 2021, the parties requested the Court to stay the case while they exchanged and reviewed that information, which the Court granted the following day. Shortly thereafter, Defendant produced complete timekeeping data for the sample set of Opt-In Plaintiffs.

### E. Settlement Negotiations

Upon receipt and review of the timekeeping data from the sample set, Plaintiff sent an initial settlement demand to Defendant on April 23, 2021. Counsel for the parties had multiple, productive conversations about the demand over the following weeks and agreed that this case would be suitable for mediation. On August 4, 2021, the parties participated in private mediation via Zoom. After 6.5 hours of negotiation, the parties were able to reach a settlement agreement.

### F. The Proposed Settlement

The proposed settlement provides settlement payments to Plaintiff Patricia Hardimon and the seventy-five Opt-Ins that represents a very substantial percentage of their claimed damages. The individual allocations to Patricia Hardimon and the Opt-Ins are proportionate to their respective damages as estimated by Plaintiffs' counsel and are based upon their actual pay records and potentially recoverable damages. The proposed distribution provides for a substantial recovery for Plaintiff and the Opt-Ins. By Plaintiffs' counsel's analysis, the settlement will provide Plaintiff and the Opt-Ins compensation for, after attorneys' fees and costs, more than 90% of their alleged unpaid overtime pay damages.

Plaintiffs' counsel has thoroughly investigated the facts, including detailed analyses of the timekeeping and payroll date data assembled and exchanged by the Parties. In addition, Plaintiffs'

counsel has conducted exhaustive research into the regulations and case law. Based on their independent investigation and evaluation, Plaintiffs' Counsel believe the Settlement is fair, adequate, and reasonable and is in the best interest of Plaintiff Hardimon and the Opt-Ins in light of all known facts and circumstances, including the risk of significant delay and Defendant's defenses.

The Parties agree that bona fide disputes exist regarding Plaintiffs' claims, including but not limited to whether Plaintiff and hourly production workers are entitled to and/or owed any unpaid regular and overtime compensation for the work they performed before and after their scheduled shifts. Defendant has vigorously defended against these claims by asserting, in part, that the Plaintiff and Opt-Ins did not perform compensable work during that time, that it already paid Plaintiff and the Opt-Ins for all compensable time, and that their alleged damages would be *de minimus*. These issues, as well, could impact any potential award of damages should this matter proceed to trial.

The proposed Settlement represents a compromise of disputed claims. Nothing in this Settlement is intended or will be construed as an admission by Defendant that the Plaintiffs' claims have merit or that Defendant has any liability to Plaintiff or the Opt-Ins on those claims.

Wherefore, subject to approval by the Court, the Parties have reached a binding agreement to settle the Action upon the terms and conditions set forth herein.

## II. THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to the FLSA, 29 U.S.C. § 216(b). Court approval is warranted on all scores.

### A. The Seven-Factor Standard Is Satisfied

The Court must ensure "there is a bona fide dispute between the parties as to the employer's liability under the FLSA" and the proposed settlement "is fair, reasonable, and adequate." *Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D. Ohio May 30, 2012). *Accord, In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381-82 (S.D. Ohio 2006); *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores,*

4

*Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

In *Kritzer*, the court used seven factors to evaluate whether the proposed settlement was "fair, reasonable, and adequate" for purposes of the FLSA, 29 U.S.C. 216(b). *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *19-20. *See also Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) (applying an alternative formulation of the seven-factors) (citing *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992)); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)).

The first factor—the likelihood of success on the merits balanced against the amount and form of the settlement—strongly supports approval. Litigating FLSA claims is always risky and uncertain, and Plaintiff would have to establish not only Defendant's liability, which Defendant vehemently denies, but also the Plaintiff's and Opt-Ins' damages. Both were hotly disputed in this case. Defendant also proffered "good faith" defenses that could have shortened the limitations period and eliminated the availability of liquidated damages. The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available to the Plaintiff and Opt-Ins.

The other six factors are satisfied as well. Given the factual and legal complexity of the issues in this case, there is no guarantee that Plaintiff will prevail at trial and the litigation could be long and protracted. In contrast, the settlement assures that the Plaintiff and Opt-Ins will receive significant compensation. Given the uncertainties surrounding a possible trial in this matter, the certainty and finality of a settlement will substantially benefit the Plaintiff and Opt-Ins, and is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24 (the public interest is served when a settlement "ends potentially long and protracted litigation").

B. **The Settlement Payments Are Fair, Reasonable, and Adequate**

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban*

*County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999).

In the present case, the Individual Payments to the Plaintiff and Opt-Ins represent a substantial percentage of their claimed damages. The damages claimed in the case derive from allegations of off-the-clock work, largely as a result of work Plaintiff and the Opt-Ins alleged to have performed before and after their scheduled shifts. Defendant disputed that many of the hours at issue were compensable working time; it argued that any time performed was *de minimis*, and that Plaintiff's and the Opt-In's estimates of hours worked were incorrect. The proposed settlement here provides for a distribution to the collective group that is a substantial portion of their alleged damages, especially in light of Defendant's defenses and the risk of a defense-verdict at trial.

If approved by the Court, Plaintiff and each Opt-In will receive settlement amounts totaling approximately 90% of their potentially recoverable overtime damages as calculated by Plaintiff's counsel, even after the payment of the requested attorneys' fees, costs, and service award. Under the circumstances, the proposed allocations to the group are equitable. The Table of Individual Payments allocates the settlement proceeds among the Plaintiff and Opt-Ins in proportion to their respective alleged damages as estimated by Plaintiff's counsel.

    C.    **<u>The Service Award is Proper and Reasonable</u>**

Reasonable service awards "are common in class action settlement[s]and [are] routinely approved for the simple reason 'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at \*26 (citing *Rotuna v. West Customer Mgmt. Group*, LLC,No. 4:09cv1608, 2010 WL 2490989, at \*7. *Accord*, *In re Dunn & Bradstreet Credit Services Customer Litig.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990). Service awards are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively

6

reviewing the case and advising counsel in prosecution of the case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

The proposed settlement provides a service award to Plaintiff Hardimon in the amount of $10,000.00 in recognition of her assistance to Plaintiff's Counsel and his substantial efforts to achieving the settlement on behalf of herself and the Opt-Ins. Ms. Hardimon attended numerous meetings with counsel, brought the case in her name, provided records substantiating her claims and those of the Opt-Ins, spent numerous hours reviewing those records with counsel in advance of mediation, and attended the full-day mediation.

D. **Plaintiff's Counsel's Fees and Expenses Are Proper and Reasonable**

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)). *Accord*, *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *28 (the fee award must be "adequate to attract competent counsel but … not produce a windfall) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

In *Gascho v. Global Fitness Holdings, Inc.*, 822 F.3d 269 (6th Cir. 2016), the Sixth Circuit reaffirmed its long-standing rule regarding class- and collective-action fee awards. "When awarding attorney's fees in a class action," *Gascho* emphasized, "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Gascho*, 822 F.3d at 279 (quoting *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). Court have discretion to select the appropriate method of determining such fees "in light of the unique characteristics

7

of class actions in general, and of the unique circumstances of the actual cases before them." *Gascho*, 822 F.3d at 279 (citing *Rawlings*, 9 F.3d at 516).

The percentage approach "more accurately reflects the results achieved." *Rawlings*, 9 F.3d at 516, *quoted with approval in Gascho*, 822 F.3d at 279-80. It is appropriate in cases like this one because "it encourages early settlement, which avoids protracted litigation." *Gascho*, 822 F.3d at 279 (citing *Rawlings*, 9 F.3d at 516-17).

Applying *Fegley* and *Rawlings*, courts in the Sixth Circuit commonly approve one-third fee awards in FLSA collective actions. *See, e.g.*, *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *21 (N.D. Ohio Mar. 8, 2010) (citing *Rawlings* as well as *Jackson v. Papa John's,* Case No. 1:08CV2791 (N.D. Ohio 2008); *Fincham v. Nestle Prepared Foods Co.,* 1:08CV73 (N.D. Ohio 2008); *McGhee v. Allied Waste Indus.,* Case No. 1:07CV1110 (N.D. Ohio 2007)); *Bessey v. Packerland Plainwell, Inc*. 2007 WL 3173972 (W.D. Mich. 2007). *Accord, Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208, at *1 (S.D. Ohio Sept. 9, 2016) (approving 30% award.)

Courts reference the NERA study as "[t]he most complete analysis of fee awards in class actions conducted to date." *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000). *See Dillworth*, 2010 WL 776933, at *19-20; *Bessey*. 2007 WL 3173972, at *4 (citing study conducted by the National Economic Research Associates). The study found that "regardless of size, attorneys' fees average approximately 32% of the [class action] settlement," although "the average result achieved for class members was only 7% to 11% of claimed damages." *Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12).

Measured by the NERA benchmarks, the proposed settlement in the present case is exemplary. The settlement primarily benefits the Plaintiff and Opt-Ins. *See Gascho*, 822 F.3d at 282 (counseling courts to consider "the benefit to the class and its ratio to attorney's fees"). Two-thirds of the Total Settlement Amount is allocated to Plaintiff and Opt-Ins, and the Individual Payments they will receive represent at least 90% of their claimed lost wage damages.

Plaintiffs request, and the Settlement Agreement incorporates, payment to Plaintiff's counsel totaling $195,371.51, consisting of $191,666.67 in attorneys' fees—one third of the settlement amount—and $3,704.84 in reimbursement of litigation costs.  Defendant does not oppose this request.  The proposed fee was well-earned.  Over the course of a year, Plaintiff's Counsel sought and obtained significant informal discovery permitting a detailed and accurate analysis of alleged damages.  That analysis involved tedious and extensive extraction, culling, and manipulation of electronic data to compare the paid shifts against total hours worked, and conversion of that data into calculation into amounts alleged to be still owed to the Plaintiff and Opt-Ins.  Those analyses enabled counsel to make detailed calculations estimating the Plaintiff and Opt-Ins' claimed damages.

Against that background, the settlement ultimately achieved in this case is a significant success.  Even after an award of attorneys' fees in the requested amount, the proposed settlement payments to the Plaintiff and Opt-Ins represent more than 90% of their potentially recoverable overtime damages.

### III. CONCLUSION

For the reasons addressed above, the parties respectfully request that the Court approve the settlement by entering the proposed order attached as Exhibit 3.

Respectfully submitted,

**THE FUCHS FIRM LLC**

/s/ Joshua B. Fuchs
Joshua B. Fuchs (0087066)
14717 South Woodland Road
Shaker Heights, Ohio 44120
Phone: (216) 505-7500
Fax: (216) 505-7500
Email: josh@fuchsfirm.com

**HUX LAW FIRM, LLC**
James J. Hux (0092992)
3 Severance Circle #18147
Cleveland Heights, OH 44118
Phone: (937) 315-1106
Fax: (216) 359-7760
Email: jhux@huxlawfirm.com

9

*Counsel for Plaintiff Patricia Hardimon*

AND

/s/ Carrie A. McAtee

SHOOK, HARDY & BACON L.L.P.
Carrie A. McAtee, admitted *pro hac vice*
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone:  (816) 474-6550
Facsimile:  (816) 421-5547
Email:   cmcatee@shb.com

BLACK, McCUSKEY, SOUERS & ARBAUGH
Gust Callas (#0015815)
Whitney L. Willits (#0089728)
220 Market Avenue South, Suite 1000
Canton, Ohio 44702
Ph: (330) 456-8341
Fax: (330) 456-5756
Email: gcallas@bmsa.com
           wwillits@bmsa.com

*Counsel for Defendant ERICO International Corp.*

CERTIFICATE OF SERVICE

    I certify that on this 7th Day of September, 2021 a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

    *s/ Joshua B. Fuchs*
    Joshua B. Fuchs (0087066)